**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

THE NEW YORK TIMES COMPANY, and
CHARLIE SAVAGE,

        Plaintiffs,

    v.

U.S. DEPARTMENT OF DEFENSE,

        Defendant.

25 Civ. 9375 (VSB)

---

## DECLARATION OF RICKY D. BURIA

I, Ricky D. Buria, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the Chief of Staff to Secretary of War Pete Hegseth. I have held this role since December 2025. In this role, I serve as the principal civilian adviser to Secretary Hegseth, manage his front office staff, and advise on a wide range of policy, personnel, and operational matters. In this current capacity, I have been delegated original classification authority for Department of War (DoW) information up to the TOP SECRET level. Prior to this role, I served as a Military Assistant to Secretary Hegseth. I also recently retired as a Colonel in the United States Marine Corps after serving for over 20 years in active duty. With my extensive background in military operations and executive-level staff work, I support the Secretary in ensuring the readiness, lethality, and effectiveness of the Joint Force.

2.      I submit this declaration in support of the government's motion for summary judgment in this case. Its purpose is to provide the DoW's rationale for withholding information not already publicly released. The statements that follow are based on my personal knowledge, as well as information provided to me from across DoW in the course of my official duties.

1

3.    I am familiar with this civil action, the underlying FOIA requests, and the responsive records at issue, which are videos of kinetic strikes against boats and a semi-submersible carrying drugs and cartel members in the Caribbean and eastern Pacific, dated September 2, October 16, and October 27, 2025, respectively. I have personally reviewed the footage for the purposes of this litigation.  These videos, exceeding ten hours in length, track the targeted vessels before, during, and immediately after the kinetic strikes.  As an original classification authority, I am authorized to determine whether DoW information in records like these videos satisfy the requirements of Executive Order (E.O.) 13526, the executive order signed by President Barack Obama on December 29, 2009, which currently governs the classification and protection of information that affects national security. As such, I am bound by the requirements of E.O. 13526 when making classification determinations and must ensure the information complies with its various substantive and procedural criteria.

**FOIA EXEMPTION 1**

4.    For information to be properly classified, and thus properly withheld from disclosure pursuant to FOIA Exemption (b)(1), the information must meet the requirements set forth in E.O. 13526 § 1.1 (a):

    a.   an original classification authority is classifying the information;

    b.   the information is owned by, produced by or for, or is under the control of the United States Government;

    c.   the information falls within one or more of the categories of information listed in § 1.4 of this order; and

    d.   the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the

national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

5.     As I will explain in further detail below, in my role as an original classification authority for DoW, I have determined that the footage, withheld pursuant to Exemption (b)(1), is under the control of the U.S. Government, falls under categories listed in § 1.4 of the E.O., and is properly classified at the "Confidential" level overall because the unauthorized disclosure of this information reasonably could be expected to result in damage to the national security.[1] *See* E.O. 13526 § 1.2(a)(3).

6.     The videos depict extensive surveillance and tracking over a significant distance and across multiple degrees of magnification. If provided the full-length videos, a sophisticated adversary could glean technical knowledge of elevation, speed, range, and other operationally sensitive information about the ongoing military operations. Additionally, a study of the full-length videos provides insight into the optical tools utilized, and their limitations, providing adversaries information useful to defeat or degrade detection and targeting. This is distinguishable from the previously released excerpts that were authorized to be made public in order to be as transparent as was assessed to be safely possible. The information withheld has not been classified to conceal violations of law, inefficiency, or administrative error; prevent embarrassment to a person, organization, or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security, per section 1.7 of E.O. 13526.

7.     With these requirements in mind, I have personally reviewed the videos and determined that no portions thereof can be released. The information withheld under Exemption (b)(1) is currently and properly classified at the "Confidential" level pursuant to two provisions of

---

[1] The videos were originally classified as TOP SECRET but have since been downgraded to the CONFIDENTIAL classification level.

3

E.O. 13526, § 1.4(a) and (g), because it pertains to (a) military plans, weapons systems, or operations; and (g) vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security.

8.    **First**, military plans, weapons systems, or operations are exempt from disclosure under E.O. 13526 § 1.4(a). The videos clearly display active military operations, to include the scope, duration, and targeting for those operations, as well as the methods of delivery, types, and effects of military weapons systems used for both initial strikes and follow-on strikes. Disclosure of this information could reasonably be expected to cause damage to the national security because this information reveals specific operational and targeting capabilities of U.S. military forces. It also could reveal information about the effectiveness of munitions. If disclosed, adversaries could use this information to assess specific U.S. military tactics and procedures, which would allow them to develop countermeasures or modify their behavior to render ongoing U.S. military operations less effective.

9.    **Second**, vulnerabilities and capabilities of systems are exempt from disclosure under E.O. 13526 § 1.4(g). The footage offers a potential window into the capabilities and the potential vulnerabilities of U.S. military surveillance and targeting capabilities: specifically, as it relates to the military's ability to acquire or track vessels of interest, deliver accurate munitions, and assess the aftermath of those strikes. Disclosure of this information could reasonably be expected to cause damage to national security because this information reveals specific operational capabilities of U.S. military forces, as with § 1.4(a). Adversaries could potentially identify specific assets involved with ongoing operations, assess their specific capabilities and limitations, and develop countermeasures or modify their behavior to nullify these systems and place U.S. personnel at risk.

4

## SEGREGABILITY

10.     I understand that heavily truncated portions of the initial strikes at issue have been previously posted on government social media, and that similarly edited portions of subsequent strikes also continue to be officially released. I further understand that some members of Congress have viewed the footage at issue during classified briefing sessions and subsequently made public comments on those videos. However, I am unaware of any authorized public disclosures of full-length strike videos to date, which would be a departure from the usual FOIA practice.

11.     While these specific segments of the videos, which were previously released, portray events that are not themselves classified at this time, the release of those segments alongside the full-length videos could reveal classified information that is inextricably intertwined with the overall video display. This is the case due to the additional details provided by uncut footage compared to the short, limited clips in the public domain, all of which are less than a minute long. In addition, when considered as a compilation, the full-length footage could disclose classified information as anticipated by E.O. 13526 § 1.7(e).

12.     Even when sensitive aircraft telemetry data, such as location, direction, speed, altitude, system identifying information, and weapons targeting data—or images of the aircraft itself at times, depending on camera orientation—are redacted from the screen, releasing more footage than the previously cleared short clips would give damaging insight into current imaging capabilities and military strike precision. Moreover, in the case of any footage relating to an operation with a secondary follow-on action, no such footage has been previously released. Indeed, there are unique considerations with such events including, but not limited to, the potential to disclose the effectiveness of munitions, damage assessments, and U.S. military decision-making relating to follow-up actions.

13.     After my review, I conclude that no reasonable segregation and release of non-

exempt information is possible beyond what is already in the public domain. For the reasons stated above, the footage at issue is currently and correctly withheld pursuant to FOIA Exemption 1 to prevent damage to national security resulting from disclosure.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and information.

EXECUTED this _11_ day of June, 2026 in Arlington, VA.

Ricky D. Burla
Chief of Staff to the Secretary
U.S. Department of War

6