**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE NEW YORK TIMES COMPANY and
CHARLIE SAVAGE,

                    Plaintiffs,

v.

DEPARTMENT OF DEFENSE,

                    Defendant.

No. 25 Civ. 9375 (VSB)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2695

Of Counsel:

JEFFREY OESTERICHER
Assistant United States Attorney

**CONTENTS**

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND .....................................................................................................................1

    I.    The FOIA Requests.................................................................................................1

    II.   The Records at Issue ..............................................................................................2

ARGUMENT...........................................................................................................................3

    I.    Standard of Review................................................................................................3

    II.   The Government Properly Withheld the Videos Under Exemption 1 ......................4

CONCLUSION........................................................................................................................9

i

# AUTHORITIES

*Page(s)*

*Cases*

*ACLU v. DOD*,
  901 F.3d 125 (2d Cir. 2018) ...................................................................................4, 8

*ACLU v. DOJ*,
  681 F.3d 61 (2d Cir. 2012) ........................................................................................4

*C.I.A. v. Sims*,
  471 U.S. 159 (1985) ...........................................................................................3, 4, 8

*Carney v. U.S. Dep't of Justice*,
  19 F.3d 807 (2d Cir. 1994) ........................................................................................3

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ......................................................................................................3

*Grand Cent. P'ship v. Cuomo*,
  166 F.3d 473 (2d Cir. 1999) ......................................................................................3

*Halperin v. CIA*,
  629 F.2d 144 (D.C. Cir. 1980) ..................................................................................8

*Jud. Watch, Inc. v. DOD*,
  715 F.3d 937 (D.C. Cir. 2013) ..................................................................................8

*Osen LLC v. U.S. Cent. Command*,
  969 F.3d 102 (2d Cir. 2020) ......................................................................................8

*Pub. Educ. Ctr., Inc. v. Dep't of Def.*,
  905 F. Supp. 19 (D.D.C. 1995) ..................................................................................8

*Seife v. FDA*,
  43 F.4th 231 (2d Cir. 2022) .......................................................................................3

*Students Against Genocide (SAGE) v. Dep't of State*,
  1998 WL 699074 (D.D.C. Aug. 24, 1998) ...............................................................8

*Washington v. United States Dep't of Just.*,
  160 F. Supp. 3d 226 (D.D.C. 2016) ...........................................................................8

*Wilner v. NSA*,
  592 F.3d 60 (2d Cir. 2009) ....................................................................................4, 8

***Statutes***

5 U.S.C. § 552................................................................................................................3, 4

***Rules***

Fed. R. Civ. P. 56.............................................................................................................3

***Other Authorities***

Exec. Order No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) .......................................... 1, 4, 5, 6, 8

**PRELIMINARY STATEMENT**

This Freedom of Information Act ("FOIA") lawsuit concerns three videos of kinetic strikes against boats and a semi-submersible in the Caribbean and eastern Pacific, which occurred on September 2, October 16, and October 27, 2025. Heavily truncated portions of the initial strikes at issue have been publicly released. However, the government's declarant explains that the full-length footage, which exceeds 10 hours in length, is currently and properly classified, as it contains information that would reveal military weapons systems and operations, as well as vulnerabilities and capabilities of military systems. As the declaration logically and plausibly establishes that the withheld information meets the requirements set forth in E.O. 13526 § 1.1(a), the three videos are protected from disclosure pursuant to FOIA exemption 1. Accordingly, the Court should grant summary judgment to the government.

**BACKGROUND**

## I.    The FOIA Requests

On September 9, 2025, plaintiffs sent a FOIA request to United States Southern Command ("SOUTHCOM"). *See* Compl. ¶ 19. This request sought "a copy of surveillance video related to the operation in the Caribbean Sea on or about Sept. 2, 2025, in which the U.S. military attacked a boat that President Trump said was carrying drugs and 11 members of Tren de Aragua." *Id.* ¶ 20. It further specified that responsive records would include "the entire video from each available source, starting one hour before the strike or strikes and continuing for one hour after the strike or strikes." *Id.*[1]

On November 1, 2025, plaintiffs submitted a second FOIA request to SOUTHCOM. That

---

[1] Plaintiffs also submitted the same request to the United States Special Operations Command ("SOCOM") and the Office of the Secretary of Defense. Compl. ¶ 25. These requests were referred to SOUTHCOM.

request sought "the entire videos from each available source for the two strikes to date in which the administration said there were survivors: the strike on a semisubmersible [President] Trump announced on Truth Social on . . . October 18, and one of the trio of strikes [Secretary] Hegseth announced on X on Oct. 28." Compl. ¶ 27. It further specified that responsive records would include "the entirety of footage showing survivors—including the rescue of two survivors from the earlier strike, and footage extending at least five minutes past any disappearance below the waves of the one who initially survived the second strike—even if that period extends past one hour following the strikes." *Id.* The request also renewed the request for footage from the September 2 strike. *Id.*

As reflected in status reports and requests for extension filed on the docket, *see, e.g.*, Dkt. Nos. 13, 18, 21, because the records requested were stored on classified systems, as well as because of the need for inter-agency coordination, the government required significant time to process plaintiffs' FOIA requests. The government ultimately located all three requested videos and determined that it would not make any further release of the requested videos, withholding them on the basis of FOIA exemption 1. *See* Dkt. No. 23. Plaintiffs challenge these withholdings. *Id.*

## II.    The Records at Issue

As explained in the declaration of Ricky D. Buria, Chief of Staff to the Secretary of War ("Buria Decl."), the responsive records at issue are videos of kinetic strikes against boats and a semi-submersible carrying drugs and cartel members in the Caribbean and eastern Pacific, which occurred on September 2, October 16, and October 27, 2025. Buria Decl. ¶ 3. These videos, which exceed ten hours in length, track the targeted vessels before, during, and immediately after the kinetic strikes. *Id.* They "clearly display active military operations, to include the scope, duration, and targeting for those operations, as well as the methods of delivery, types, and effects of military weapons systems used for both initial strikes and follow-on strikes." *Id.* ¶ 8. They also "offer a

2

potential window into the capabilities and the potential vulnerabilities of U.S. military surveillance and targeting capabilities"—"specifically, as it relates to the military's ability to acquire or track vessels of interest, deliver accurate munitions, and assess the aftermath of those strikes." *Id.* ¶ 9.

Heavily truncated portions of the initial strikes at issue have been previously posted on government social media. *See id.* ¶ 10. However, the government is unaware of any authorized public disclosures of full-length strike videos—including any footage relating to an operation with a secondary follow-on action—to date. *Id.* ¶¶ 10, 12.

## ARGUMENT

### I.    Standard of Review

FOIA requires agencies to make certain records available to the public. But the statute also recognizes "that public disclosure is not always in the public interest," *C.I.A. v. Sims*, 471 U.S. 159, 166–67 (1985), and mandates that records need not be disclosed if the documents "fall within" the statute's "enumerated exemptions," *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001); *see* 5 U.S.C. § 552(b). To withhold records under a FOIA exemption, an agency must determine that disclosure would foreseeably harm an interest protected by the exemption, or is prohibited by law. 5 U.S.C. § 552(a)(8)(i); *see Seife v. FDA*, 43 F.4th 231, 234 (2d Cir. 2022).

FOIA disputes are generally resolved by summary judgment. *See, e.g.*, *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). Summary judgment is warranted if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An agency meets its burden through declarations providing "reasonably detailed explanations" for any asserted exemptions, *Carney*, 19 F.3d at 812 (footnote omitted), and the agency's declaration is "accorded a presumption of good faith," *id.* (quotation marks omitted);

3

*Wilner v. NSA*, 592 F.3d 60, 69 (2d Cir. 2009).[2]

An agency's explanation for the application of exemptions is sufficient if it appears logical and plausible. *See ACLU v. DOD*, 901 F.3d 125, 133 (2d Cir. 2018) (as amended Aug. 22, 2018). In the area of national security, the government's declarations are entitled to "*substantial weight.*" *ACLU v. DOJ*, 681 F.3d 61, 69 (2d Cir. 2012) (emphasis in original). This judicial deference extends both to executive determinations as to whether disclosure of particular facts would reveal protected information, *see Sims*, 471 U.S. at 179, and to their predictive judgments regarding the potential harms that could reasonably be expected to flow from public disclosure, *see, e.g.*, *ACLU*, 901 F.3d at 134.

## II.    The Government Properly Withheld the Videos Under Exemption 1

The government's declaration logically and plausibly establishes that the videos are protected from disclosure by FOIA exemption 1. The government withheld classified information pursuant to exemption 1 concerning (a) military plans, weapons systems, or operations; and (g) vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security. Buria Decl. ¶¶ 5–13. The material withheld under exemption 1 is currently and properly classified. *Id.* Disclosure could reasonably be expected to cause harm to national security, *see id.*, thereby causing foreseeable harm to an interest protected by exemption 1, *see* 5 U.S.C. § 552(a)(8)(i).

Exemption 1 protects records that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and [] in fact [are] properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Pursuant to Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) ("E.O. 13526"), information is properly

---

[2] FOIA cases are excepted from the Local Civil Rule 56.1 statement requirement. *See* Local Civil Rule 56.1(a).

classified if (1) an original classifying authority classified the information; (2) the information is "owned by, produced by or for, or is under the control of the United States Government;" (3) the information pertains to one or more of eight protected categories of information listed in section 1.4 of E.O. 13526; and (4) an original classification authority "determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and be "able to identify or describe the damage." E.O. 13526 § 1.1(a)(1)–(4); *see also* Buria Decl. ¶ 4.

The declaration of Ricky D. Buria, Chief of Staff to the Secretary of War and an original classification authority, establishes that each of these criteria is met with respect to the information withheld under exemption 1. The information withheld under exemption 1 has been classified at the Confidential level. Buria Decl. ¶¶ 5, 7. It is under the control of the United States government. *Id.* ¶ 5. Disclosure of the information withheld under exemption 1 would reveal information subject to two provisions of E.O. 13526, § 1.4(a) and (g). *Id.* ¶¶ 6–9.

First, the videos "clearly display active military operations, to include the scope, duration, and targeting for those operations, as well as the methods of delivery, types, and effects of military weapons systems used for both initial strikes and follow-on strikes." Buria Decl. ¶ 8. This information falls under E.O. 13526 § 1.4(a), which protects "military plans, weapons systems, or operations." Disclosure of this information "could reasonably be expected to cause damage to the national security because this information reveals specific operational and targeting capabilities of U.S. military forces." *Id.* It also could "reveal information about the effectiveness of munitions." *Id.* If disclosed, "adversaries could use this information to assess specific U.S. military tactics and procedures, which would allow them to develop countermeasures or modify their behavior to render ongoing U.S. military operations less effective." *Id.*

5

Second, the full-length videos "offer a potential window into the capabilities and the potential vulnerabilities of U.S. military surveillance and targeting capabilities"—"specifically as it relates to the military's ability to acquire or track vessels of interest, deliver accurate munitions, and assess the aftermath of those strikes." Buria Decl. ¶ 9. This information falls under E.O. 13526 § 1.4(g), which protects "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security." Disclosure of this information "could reasonably be expected to cause damage to national security because this information reveals specific operational capabilities of U.S. military forces, as with § 1.4(a)." *Id.* Adversaries could "potentially identify specific assets involved with ongoing operations, assess their specific capabilities and limitations, and develop countermeasures or modify their behavior to nullify these systems and place U.S. personnel at risk." *Id.*

Heavily truncated portions of the initial strikes at issue have been previously posted on government social media, and similarly edited portions of subsequent strikes also continue to be officially released. Buria Decl. ¶ 10.[3] While these specific segments of the videos at issue, which were previously released, "portray events that are not themselves classified at this time, the release of those segments alongside the full-length videos could reveal classified information that is inextricably intertwined with the overall video display." *Id.* ¶ 11. This is the case "due to the additional details provided by uncut footage compared to the short, limited clips in the public domain, all of which are less than a minute long." *Id.* In addition, "when considered as a compilation, the full-length footage could disclose classified information as anticipated by E.O.

---

[3] Furthermore, some members of Congress have viewed the footage at issue during classified briefing sessions and subsequently made public comments on those videos. Buria Decl. ¶ 10. However, Chief of Staff Buria is unaware of any authorized public disclosures of full-length strike videos to date. *Id.*

13526 § 1.7(e)." *Id.* Even when sensitive aircraft telemetry data, such as location, direction, speed, altitude, system identifying information, and weapons targeting data—or images of the aircraft itself at times, depending on camera orientation—are redacted from the screen, "releasing more footage than the previously cleared short clips would give damaging insight into current imaging capabilities and military strike precision." *Id.* ¶ 12. Moreover, in the case of any footage relating to an operation with a secondary follow-on action, no such footage has been previously released. *Id.* Indeed, "there are unique considerations with such events including, but not limited to, the potential to disclose the effectiveness of munitions, damage assessments, and U.S. military decision-making relating to follow-up actions." *Id.*

As Chief of Staff Buria also explains, the "videos depict extensive surveillance and tracking over a significant distance and across multiple degrees of magnification." *Id.* ¶ 6. "If provided the full-length videos, a sophisticated adversary could glean technical knowledge of elevation, speed, range, and other operationally sensitive information about the ongoing military operations." *Id.* "Additionally, a study of the full-length videos provides insight into the optical tools utilized, and their limitations, providing adversaries information useful to defeat or degrade detection and targeting." *Id.* The full-length videos are thus different from the "previously released excerpts that were authorized to be made public in order to be as transparent as was assessed to be safely possible." *Id.*

Moreover, the Buria Declaration explains that "no reasonable segregation and release of non-exempt information is possible beyond what is already in the public domain." *Id.* ¶ 13. Further, Chief of Staff Buria avers that "information withheld has not been classified to conceal violations of law, inefficiency, or administrative error; prevent embarrassment to a person, organization, or agency; restrain competition; or prevent or delay the release of information that does not require

protection in the interests of national security, per section 1. 7 of E.O. 13526." *Id.* ¶ 6.

Courts have upheld exemption 1 assertions over information that would reveal U.S. government tracking and surveillance capabilities. *See, e.g.*, *Students Against Genocide (SAGE) v. Dep't of State*, 1998 WL 699074, at *7 (D.D.C. Aug. 24, 1998) (upholding exemption 1 assertion over, among other things, satellite imagery depicting Srebrenica massacre, because disclosure could reveal classified imaging capabilities of the satellite), aff'd, 257 F.3d 828 (D.C. Cir. 2001); *Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.*, 160 F. Supp. 3d 226, 236 (D.D.C. 2016) (upholding exemption 1 assertion over FBI use of unmanned aerial vehicles for intelligence activities).

Courts have also upheld exemption 1 assertions over images and videos of military operations and their aftermath. *See, e.g.*, *Jud. Watch, Inc. v. DOD*, 715 F.3d 937, 941 (D.C. Cir. 2013) (upholding exemption 1 assertion over post-mortem images of Osama bin Laden); *see also Pub. Educ. Ctr., Inc. v. Dep't of Def.*, 905 F. Supp. 19, 21 (D.D.C. 1995) (upholding exemption 1 assertion over videos showing combat involving United States forces in Somalia).

Courts have further recognized that in the national security context, "bits and pieces of data 'may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself.' " *Sims*, 471 U.S. at 178 (quoting *Halperin v. CIA*, 629 F.2d 144, 150 (D.C. Cir. 1980)). That principle applies here.

The Buria Declaration, which is entitled to "substantial weight," *Wilner*, 592 F.3d at 73, 76, thus logically and plausibly establishes that the information withheld under exemption 1 is properly classified, *ACLU*, 901 F.3d at 133. The Court should therefore sustain the government's exemption 1 withholdings. *See, e.g.*, *Osen LLC v. U.S. Cent. Command*, 969 F.3d 102, 115–16 (2d Cir. 2020) (deferring to executive judgment about whether disclosure of certain images would

expose vulnerabilities of military and upholding exemption 1 claim).

**CONCLUSION**

For the foregoing reasons, and the reasons set forth in the government's declaration, the government's motion for summary judgment should be granted.

Dated: June 12, 2026
      New York, New York

Respectfully submitted,

JAY CLAYTON
United States Attorney
Southern District of New York

By:    */s/ Jeffrey Oestericher*
      JEFFREY OESTERICHER
      Assistant United States Attorney
      86 Chambers Street, 3rd Floor
      New York, New York 10007
      Tel.: (212) 637-2695

9

CERTIFICATE OF COMPLIANCE

I, Jeffrey Oestericher, counsel of record for defendant, certify that this brief was prepared using Microsoft Word, and that this processing program has been applied to include all text other than what Local Rule 7.1(c) allows to be excluded in preparing the following word count. I further certify that this brief contains 2568 words.

By:    */s/ Jeffrey Oestericher*
       Jeffrey Oestericher
       Assistant United States Attorney